NO. 07-08-0273-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 11, 2010

_____

CRAIG D. ROSS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-415,034; HON. CECIL G. PURYEAR, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Craig D. Ross (appellant) appeals his conviction for possession with intent to deliver a controlled substance. Through two issues, he contends that the evidence is insufficient to support his conviction and the trial court abused its discretion by allowing the State to continue questioning appellant's co-defendant after she invoked her Fifth Amendment right not to testify. We affirm.

***Background***

Officer Shane Bledsoe (Bledsoe) with the Lubbock Police Department testified that on the night of December 9, 2006, he arrested appellant for possession of a controlled substance with the intent to deliver. He made contact with appellant for failing to use his turn signal and for making a wide right turn; however, appellant took longer than usual to stop his vehicle. Upon approaching the vehicle, Bledsoe observed appellant, in the driver's seat, and a passenger, Valerie Padilla (Padilla). The latter was in the front passenger seat. The officer smelled marijuana coming from the car. So, he ordered appellant to step out of the car and patted him down for weapons. Appellant was found to be in possession of $837.00 and then was placed in the backseat of Bledsoe's patrol car without handcuffs. Bledsoe went back to the car and had Padilla exit it. She was wearing a large coat that the officer had her remove. When that was done, he patted her down, along with the coat. While doing so, the officer felt a baggie in the right pocket of the coat. Upon inspection, he noticed that it contained what he believed to be crack cocaine. This resulted in Padilla being arrested and placed in another officer's car.

A search of the car unearthed a 6.5 ounce baggie of marijuana in the middle console. This resulted in appellant's arrest and transportation to jail. While being transported and after realizing that Padilla had been arrested too, appellant said to the officer: "you know all that shit is mine." Appellant also stated that she knew nothing of the drugs.

The State called Padilla to testify at trial. However, she invoked her Fifth Amendment right against self-incrimination. Despite this, the State continued to propound questions to her about prior statements made by her. Those statements purportedly

involved appellant's tossing the baggie of cocaine to her when the police stopped him and about the cocaine and marijuana not belonging to her.

### *Issue One - Sufficiency of the Evidence to Link the Controlled Substance*

In his first issue, appellant contends the evidence is insufficient to link him to the drugs found. This is so because the drugs were found in the passenger's coat pocket. We overrule the issue.

*Authority*

The standards of review for legal and factual sufficiency are found in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006). We refer the parties to those cases for review.

In addition to appellant's statement to the officer that the "shit" or drugs were his, other evidence revealed that 1) appellant was present in the car where the drugs were found, 2) the smell of marijuana escaped from the car when stopped, 3) other contraband was found in the console in proximity to where appellant had been seated, 4) appellant had money on him in denominations that are frequently used to purchase drugs, 5) appellant took longer than necessary to stop his car when the officer activated his lights, and 6) the cocaine found was in quantities for sale and not for personal use.[1] These facts are sufficient to link appellant to the drugs and show that he exercised care, custody, or control over them.

---

[1]There is some discussion about whether appellant's reference to the drugs being his included both the cocaine and marijuana. Appellant suggests that it encompassed only the marijuana. Yet, the officer stated that he had told appellant that Padilla was being arrested for possessing both drugs when appellant replied that "all" the stuff was his. Whether appellant meant some, both or none was for the jury to decide given that it was the factfinder. And, we cannot say that it interpreting the comment to include both would be unreasonable.

We also recognize that appellant offered an alternative theory for the jury's consideration. That is, he attempted to show that Padilla was responsible for the cocaine since it was in her coat. Yet, the jury was not required to believe the theory, *see Evans v. State,* 202 S.W.3d 158, 166 (Tex. Crim. App. 2006), and we cannot say that its resolution of the matter undermines our confidence in the verdict. In short, the evidence is both legally and factually sufficient.

### *Issue Two - Fifth Amendment Right of Co-Defendant*

In his next issue, appellant contends that the trial court erred by allowing the State to continue to question Padilla about prior statements made by her after she invoked her right against self-incrimination. According to appellant, the questions were designed to give the inference that appellant possessed the drugs up until the time of the stop at which time he tossed them to Padilla to put in her pocket. We overrule the issue.

We initially note that the State conceded error in this matter. It nonetheless believes the error to be harmless. We agree.

To assess the likelihood that the jury's decision was adversely affected by the questioning, we consider the entire record, the other evidence admitted, the nature of the evidence supporting the verdict, and the character of the error in light of the other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 357-58 (Tex. Crim. App. 2002) (evaluating harm from erroneously admitted evidence). We also consider the arguments of counsel and the extent to which the State emphasized the improper evidence. *Id.* at 358; *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

4

As stated earlier, appellant admitted that "all" of the drugs belonged to him, or so a reasonable jury could conclude. That admission carries much weight. So too was he found in possession of a large amount of money, as would one dealing in drugs. That he owned the car from which the smell of marijuana escaped and personally possessed marijuana is other evidence of import, and when considered in totality, the evidence of appellant's guilt was and is quite substantial.

Next, the State did refer to Padilla in its closing argument. Those comments consisted of the prosecutor saying, "if you remember, Valerie Padilla walked into this courtroom under subpoena, and every question that was asked of her, her response was, 'I take my 5th Amendment.'" After that, no other mention was made of Padilla or her invocation of the Fifth Amendment. We also note that in calling her, the State may have been risking appellant's conviction. Simply put, it was playing with a two-edged sword. It is not farfetched for a lay juror to question why she would opt to remain silent if she did nothing wrong. So, her invocation of the Fifth Amendment could well have led the jury to believe that she actually possessed the cocaine, not appellant. Given that, the tactic may have posed more risk to the State than to appellant.

We also note that the relevant questions asked of Padilla (which resulted in her invocation of the Fifth Amendment) were rather exculpatory in nature. That is, they could be viewed as tending to reduce or negate her own culpability. For instance, they consisted of her being asked whether 1) "he [appellant] threw [her] a package, a clear plastic package, containing crack cocaine" and told her to hold it, 2) he told her "'[h]ere, grab this,'" and she put the package in the pocket of her coat, 3) she told the police that she knew nothing about the cocaine or the marijuana, 4) she possessed money when searched

5

(which she did not), 5) appellant continued to drive though being directed to stop and during which period he threw the package of cocaine to her, and 6) she held the drugs to protect appellant with whom she was having a relationship.

After considering the foregoing, we cannot say that the purported error either affected appellant's substantial rights or left us unable to conclude, beyond reasonable doubt, that it did not affect the jury's decision. In sum, we find no harm. This, however, is not to be viewed as indication that we approve of any litigant's effort to engage in or create error simply because other factors may somehow ameliorate the conduct's affect. Harm is assessed on a case-by-case basis. The pertinent indicia encompassed in the next case may well call for a different result, especially if the accused does not admit that the drugs were his.

Accordingly, the judgment of the trial court is affirmed.


Brian Quinn
Chief Justice


Do not publish.